American Cranberry Exchange, Appellant, v. Pennsylvania Railroad Company, trading as Star Union Line, Appellee.

## Gen. No. 24,548.

1. CARRIERS—*consignee agent receiving new bill of lading en route may sue thereon.* Where the original shipper of a carload of cranberries consigned them to a sales agency and at the request of the latter the car was, while in transit, diverted to Chicago by defendant carrier and a through bill of lading in lieu of the original was issued to such sales agency the later was entitled to maintain a suit against the carrier for damages resulting from its failure properly to transport the car.

2. CARRIERS—*proper party to sue on bill of lading.* In determining who is the proper party plaintiff in a suit against a carrier for damages because of improper carriage of freight a liberal rule should be applied where it cannot in any way result in any injustice or hardship to the defendant.

Appeal by plaintiff from the Municipal Court of Chicago; the Hon. EDWARD T. WADE, Judge, presiding. Heard in the third division of this court for the first district at the March term, 1923. Reversed and remanded.    Opinion filed April 30, 1924.

J. M. CONNERY, for appellant; CHARLES H. GORMAN, of counsel.

LOESCH, SCOFIELD, LOESCH & RICHARDS, for appellee; THEODORE SCHMIDT, of counsel.

MR. JUSTICE O'CONNOR delivered the opinion of the court.

Plaintiff brought an action of the fourth class against the defendant to recover damages on account of the failure of the railroad company to properly transport 225 barrels of cranberries from Hanover Farms, N. J. to Chicago, Ill. The damages claimed were in the sum of $908.26. The defendant filed an affidavit of merits, which in effect denied that it was

guilty of any negligence in the transportation of the berries. The trial was before a judge and a jury and at the close of the plaintiff's evidence, the court on motion of the defendant's counsel, directed a verdict in favor of the defendant. The ground of the motion was that the plaintiff was not the proper party to bring the suit.

The evidence tends to show that W. H. Reeves of Hanover Farms, N. J. was the grower of the cranberries in question and that he, together with other growers of cranberries in that vicinity, was a member of an organization known as the Growers' Cranberry Company; that in December, 1914, Reeves loaded, packed and shipped the 225 barrels of cranberries in a car at Hanover Farms, N. J.; that he dealt directly with the Growers' Cranberry Company; that a bill of lading was issued and the berries were to be transported to plaintiff, the American Cranberry Exchange at Pitcairn, Pa.; that Reeves delivered the bill of lading to the Growers' Cranberry Company. The evidence further shows that plaintiff, the American Cranberry Exchange, was the sales agent of the Growers' Cranberry Company; that when the car was in transit from Hanover Farms to Pitcairn, being transported from Reeves to plaintiff, plaintiff requested the defendant to divert the car and sent it to E. L. Hasler Company, Chicago. The evidence further tends to show that plaintiff, the American Cranberry Exchange, transacted business in New York city and its secretary and assistant manager testified that about the time the car of berries arrived at Pitcairn, Pa., plaintiff sold the berries to the Hasler Company of Chicago and directed the Railroad Company to divert the car to that destination; that at that time he surrendered up the original bill of lading to defendant and a through bill of lading was given to plaintiff; that bill of lading was offered in evidence and is designated "straight bill of lading—original—not negotiable." It states that the Pennsylvania Railroad

Company received the cranberries at Hanover Farms, N. J., from the Growers' Cranberry Company. It is signed by a representative of the Railroad Company in New York city and the name of the shipper appears as "Growers' Cranberry Co., per American Cranberry Exchange." When the berries arrived in Chicago the Hasler Company refused to receive them, claiming that they were in a damaged condition.

On the trial of the case, counsel for plaintiff asked a witness the following question, "Do you know whether or not the American Cranberry Exchange is the lawful holder of the bill of lading  *   *   *?" An objection to this question was sustained. We think the ruling was proper, as the question clearly called for a conclusion. The facts, however, were all brought out in the evidence, and this was all that plaintiff was entitled to. Even if the question was answered in the affirmative, it would add nothing to plaintiff's case. Counsel for plaintiff also wanted to show that Reeves, the grower of the berries, was a director of plaintiff corporation and that at a meeting of the board of directors of that company, action was taken authorizing the beginning of this suit. On objection, this evidence was excluded. The question asked might be held to call for a conclusion of the witness. There must be a retrial of the case. But, with this evidence excluded, we think that under the evidence plaintiff was authorized to maintain this suit in its own name. *Edgerton v. Chicago, R. I. & P. Ry. Co.*, 240 Ill. 311. In that case, it appeared that H. Fishback of Beatrice, Neb. shipped a carload of eggs via the Rock Island Railroad to Edgerton, who was doing a commission business on South Water Street, Chicago. When the car reached Chicago, it was placed on a team track at Twelfth and Taylor streets. The eggs were there inspected, but the number of cases was not counted. The car was re-sealed. Edgerton on the same day sold the eggs to one Roberts and

46     APPELLATE COURTS OF ILLINOIS.

American Cranberry Ex. v. Pennsylvania R. Co., 233 Ill. App. 43.

both of these parties gave an order to the defendant Railroad Company to re-route the car and send it to Albany, N. Y. When the car arrived at its destination it was sealed. The car was then opened and there was found to be a shortage of 53 cases. The court there said (p. 314):

"The only serious question in this case is whether appellee (Edgerton) was the proper party to bring this action. It is contended by appellant that Roberts was the owner after the sale to him * * *, and that under the rule of law that where a person has no property or interest in the goods he cannot sue in an action *ex delicto* for a breach of duty by the carrier, * * * the appellee could not bring this action."

The court then said the decisions of the various jurisdictions on the question could not be harmonized and continuing said (p. 315): "This court, in *Great Western Railroad Co. v. McComas,* 33 Ill. 185, in an action on the case for negligence, stated (p. 187): 'The company made the contract to carry and deliver, with McComas, and there is no principle better settled than that the consignor, for a breach of the duty, be he but a bailee, may sue. He has such a special property in the goods as to give him the right of action. So may the real owner sue, and so may the consigee. The company cannot excuse themselves, in a suit brought by the consignor for negligence, that the real title was in his bailor, unless they show the property has been taken out of their possession by him without any injury or injustice to the lender or bailor.' " The court then quotes from other authorities, among them being the case of *Freeman v. Birch,* 28 Eng. Com., L. R., 543, saying that that case "clearly establishes the right of the bailee to sue, yet this must not be understood necessarily to exclude the bailor from the exercise of a similar right,—supposing, that is to say, he chooses to step in and anticipate the bailee in bringing an action,—a conclusion which seems to be deducible from the general state and condition of

property under bailment, which is, as it were *in dubio* between the parties, and vested for some purposes in the bailee and for some in the bailor.   The right of property being thus floating and undetermined, it seems to follow that the right of action which arises from it must partake of the same properties and must so continue until it is finally fixed and determined by one or the other party appropriating it to himself. * * * It cannot be denied that the right of an agent or a bailee, having a special property in the goods which are the subject-matter of the transaction, to sue for any default of the carrier in respect to them while in the course of transportation, is subservient to the right of the principal to interfere and bring the action in exclusion of the agent's or bailee's right.   The rule in such cases is stated by Parke, B., to be, that either the bailor or the bailee in such cases may sue, and whichever first obtains damages it is a full satisfaction.''   And the court held that the suit was properly brought in the name of Edgerton.

In the instant case, it might be said that the right of property in question was ''in dubio''—that it was floating and undetermined, and the plaintiff, The American Cranberry Exchange, being the sales agent, had such a special interest in the berries as would warrant it in maintaining the suit, and, of course, any adjudication of the matter will fix the liability if any, of the defendant.

The answers made by the defendant to interrogatories which were filed by plaintiff showed that Reeves originally shipped the cranberries and that they were consigned to plaintiff at Pitcairn, Pa. and while in transit, at plaintiff's request, the car was diverted to Chicago by the defendant and a through bill of lading issued to the plaintiff.   In these circumstances, we think the plaintiff was entitled to maintain the suit and the motion for a directed verdict should have been denied.   Of course, an argument can be made on the

other side, but we think a liberal rule should be applied where it cannot in any way result in any injustice or hardship to the defendant. *Barnes v. Cudahy Packing Co.,* 228 Ill. App. 490; *New York Cent. & H. River R. Co. v. Kinney,* 43 Sup. Ct. 122. And this rule is authorized by the decision of the Supreme Court of this state in the *Edgerton* case.

The judgment of the Municipal Court of Chicago is reversed and the cause remanded.

*Reversed and remanded.*

Taylor, P. J. and Thomson, J. concur.